UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SD PROTECTION, INC.,

                 Plaintiff,

    -against-

EDWARD DEL RIO,

                 Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

06-CV-5571 (NGG) (RML)

NICHOLAS G. GARAUFIS, District Judge.

    Plaintiff SD Protection, Inc. ("SD"), a provider of chaperone and supervision services, alleges that Defendant Edward Del Rio ("Del Rio"), whom SD employed in 2005 as its seasonal District Field Manager, breached the non-compete and non-solicitation covenants in the parties' "Regional Manger Compensation/Contract" (the "Contract"). (Compl. ¶¶ 6, 10, 12, 19.) SD seeks monetary damages, a declaratory judgment, and an injunction barring Del Rio from soliciting SD's clients and competing with SD's business. (Id. ¶¶ 23, 26.)

    Del Rio has moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Del Rio argues under Rule 12(b)(1) that the court must dismiss this case because (1) the complete diversity requirement is not satisfied and (2) SD does not have standing to sue under N.Y. Bus. Corp. L. § 1312(a). (Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem.") at 5-7.) Del Rio argues under Rule 12(b)(6) that, for three reasons, SD fails to state a claim for which relief can be granted. First, Del Rio argues, SD is not licensed to provide security services in New York as required by N.Y. Gen. Bus. L. § 70.2, and

1

thus is not entitled to enforcement of its contracts. (Id. at 4.) Second, the Contract is not signed by either party, and therefore violates the Statute of Frauds.[1] (Id. at 9.) Third, the non-compete covenant is unenforceable because it imposes an unreasonable temporal and geographic restraint and does not defend any legitimate protectable interest. (Id. at 9-13.)

For the reasons set forth below, I deny Defendant's motion to dismiss.

**I.      Background**

Because Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. New York State Dept. Of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

SD is a Florida corporation. (Compl. ¶ 1.) SD provides chaperone and supervision services for tour operators providing tour services to students and schools. (Id. ¶ 6.) The company monitors and supervises the touring students at hotels, thus ensuring that these students are "safe and accounted for, and comply with hotel room curfew requirements when on tour." (Id. ¶ 7.)

Del Rio is a citizen and domiciliary of the state of New York. (Id. ¶ 2.) In or about January 2005, SD employed Del Rio as its "seasonal District Field Manager for the New Jersey District" for the 2005 tour season. (Id. ¶ 10.) Following completion of this tour season, in or about January 2006, SD and Del Rio entered into the Contract for services to be performed

---

[1] New York's Statute of Frauds is codified in N.Y. Gen. Oblig. L. § 5-701.

during the "2006 student tour season year."[2] (Id. ¶ 12.) The Contract, which refers to SD as the "Corporation" and Del Rio as the "Manager," further provides, in relevant part:

> 1. (a) At all times while this agreement is in force, and after its expiration or termination, Manager agrees to refrain from disclosing the Corporation's client list, trade secrets, or other confidential material. Any and all activities that occur within the form of operation, but not limited to personnel, is considered Corporation property and strictly confidential. . . .
>
> 2. The undersigned Manager to this agreement is contractually obligated not to compete with Corporation in any and all forms in any manner, directly or indirectly[,] or enter into the Student Tour Industry business during the life of the contract and a period of five years after completing his last contract. . . .
>
> 3. For the purpose of this non-compete waiver, competition is defined as soliciting or accepting employment by, [or] rendering professional services to, any person or organization that is or was a client or takes inquiry into becoming a client of Corporation during the term of the Manager's contract with the corporation. Any potential client that is referred to the Manager during the term of this agreement is the client of the Corporation.

(Id. ¶ 13.)

The Contract was not signed by either of the two parties, though Del Rio and Sandra Mercado, the president of SD, communicated by email with regard to the Contract. (Compl. Ex. A.) In one email, Del Rio wrote, "Your offer is accepted. I am at your service and at your disposal. . . . Thank you for your vote of confidence and I wouldn't let you down. Forever at

---

[2] Both the Complaint and SD's brief refer to two different contracts between SD and Del Rio, one formed in 2005 and one formed in 2006. (Compl. ¶¶ 10, 12; Plaintiff SD Protection, Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Mem.") at 4.) However, in the Complaint, SD cites the same Contract with regard to both Del Rio's 2005 employment and his 2006 employment. (Compl. ¶¶ 10, 12.) Thus, it is unclear what contract (if any) was formed in 2005. I will assume for the purpose of resolving this motion that the 2005 contract is irrelevant to this lawsuit and that the contract at issue is the 2006 Contract quoted in ¶ 12 of the Complaint. The parties are encouraged to clarify this issue in future filings.

your service. Eddie." (Id.) In another email, he wrote, "I have absolutely no intention of ever competing with you and your company or the service the company provides."[3] (Id.)

In or about June 2006, during Del Rio's term as SD's District Field Manager, SD learned that Del Rio had solicited or accepted employment in the student tour industry from SD's clients and had utilized SD's confidential information, client lists, and trade secrets. (Id. ¶¶ 15-16.) SD believes that Del Rio also disclosed this information to third parties. (Id. ¶ 17.) As a result, SD filed this lawsuit against Del Rio, seeking damages in an amount equal to three and a half times the amount received by Del Rio as compensation for services provided to SD's clients in the course of competing with SD, $70,000 in liquidated damages, a declaratory judgment decreeing that the Contract is enforceable, and an injunction barring Del Rio from further conduct in violation of the Contract. (Id. ¶¶ 23-24, 26-27.) Del Rio moved to dismiss the Complaint pursuant to Fed. R. Civ P. 12(b)(1) and (6). (Defendant's Notice of Motion to Dismiss the Complaint ("Def. Not. Mot.").)

Additional facts will be set forth as they become relevant.

## II. Discussion

Del Rio moves to dismiss this action on four grounds. First, he argues that the court must dismiss this case because (1) Plaintiff does not have standing to sue under N.Y. Bus. Corp. L. § 1312(a) and (2) this action does not satisfy the complete diversity requirement of 28 U.S.C. § 1332. Second, he argues that the Contract is unenforceable under N.Y. Gen. Bus. L. § 70.2 because SD is not licensed to provide security services in New York. Third, he argues that the Contract is unenforceable under N.Y. Gen. Oblig. L. § 5-701 because it violates the Statute of

---

[3] As presented to the court, neither email is dated.

Frauds. Fourth, he argues that the non-compete covenant is unenforceable because it imposes an unreasonable temporal and geographic restraint and does not defend any legitimate protectable interest.

### A. Standard of Review

The standards of review for dismissal under Rule 12(b)(6) for failure to state a claim for which relief can be granted and Rule 12(b)(1) for lack of jurisdiction over the subject matter are "substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003). When considering such motions, "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory, 131 F.3d at 329. A complaint will be dismissed under Rule 12(b)(6) only if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (citation omitted).

### B. Subject Matter Jurisdiction

Because this case does not involve a federal question, this court has subject matter jurisdiction only if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. SD admits that it is comprised of two separate entities, one incorporated in Florida ("SD FL") and one incorporated New York ("SD NY"). (Declaration of Sandra Mercado in Opposition to Defendant's Motion to Dismiss ("Mercado Decl.") ¶¶ 1-2.) Plaintiff alleges that the Contract was between Del Rio and SD FL. (Pl. Mem. at 4.) Because Del Rio is a citizen and domiciliary of New York, the inclusion of SD NY in this lawsuit would

5

destroy complete diversity. Thus, if SD NY must be included in this lawsuit, I must dismiss the suit for lack of complete diversity under 28 U.S.C. § 1332. However, if SD FL has standing to sue on its own, it would not be necessary to include SD NY, and complete diversity would be preserved. Thus, the question is whether SD FL can maintain this action. Del Rio makes two arguments as to why it cannot, the first based on standing and the second based on which of SD FL and SD NY is the real party of interest.

### 1. Standing

Del Rio argues that N.Y. Bus. Corp. L. § 1312(a) precludes SD from bringing this lawsuit. That statute provides, in part:

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute . . . as well as penalties and interest charges related thereto, accrued against the corporation.

N.Y. Bus. Corp. L. § 1312(a).

Although it is well-settled that this statute does not raise a jurisdictional bar, the statute "precludes the maintaining of an action by an unauthorized foreign corporation not only in the state courts of New York but also in the federal courts located in that state." Netherlands Shipmortgage Corp., Ltd. v. Madias, 717 F.2d 731, 735 (2d Cir. 1983). SD admittedly does not have a Certificate of Authority to conduct business in New York. (Pl. Mem. at 7.) However, SD has taken steps to obtain a certificate (Mercado Decl. ¶ 5) and "the failure of plaintiff to obtain a certificate pursuant to BCL 1312 may be cured prior to the resolution of the action," Uribe v. Merchants Bank of New York, 697 N.Y.S.2d 279, 280 (1st Dept. 1999). Thus, in a situation where the plaintiff has not obtained a certificate, "the more appropriate remedy [is] not outright

dismissal of the complaint, but a conditional dismissal or a stay affording plaintiff an opportunity to cure this non-jurisdictional defect." Tri-Terminal Corp. v. CITC Industries, Inc., 432 N.Y.S.2d 184, 185 (1st Dept. 1980). I consider this case law to indicate a strong opposition of New York courts to dismissing a Complaint on the ground that the plaintiff lacks a certificate, and a preference for giving the plaintiff a chance to remedy this defect.

More importantly, the question of whether SD is "doing business" in New York for the purposes of Section 1312 cannot be resolved without discovery. The standard for determining that a party is "doing business" in New York "requires the intrastate activity of a foreign corporation to be permanent, continuous, and regular." Netherlands Shipmortgage, 717 F.2d at 736. "There is . . . no precise measure of the nature or extent of activities which are determinative of whether a foreign corporation is 'doing business' within this state. Each case must be decided on its own particular facts." Bershire Engineering Corp. v. Scott-Paine, 217 N.Y.S.2d 919, 921-22 (N.Y. 1961); Netherlands Shipmortgage, 717 F.2d at 735. The party relying on Section 1312 as a statutory barrier "bears the burden of proving that the corporation's business activities in New York 'were not just casual or occasional,' but 'so systematic and regular as to manifest continuity of activity in the jurisdiction.'" S & T Bank v. Spectrum Cabinet Sales, Inc., 668, N.Y.S.2d 641, 642 (2d Dept. 1998) (quoting Matthews, Ltd. v. Robert Mabey, Inc., 499 N.Y.S.2d 254, 254 (3d Dept. 1986)) (citations omitted).

The Complaint itself does not indicate the extent of Plaintiff's contacts in New York, so Del Rio bases his argument that Plaintiff has done business in New York largely on Plaintiff's website. (Def. Mem. at 7.) However, the information Del Rio cites does not (without more) satisfy Del Rio's burden of proving that SD's activities in New York are "permanent, continuous,

7

and regular." Netherlands Shipmortgage, 717 F.2d at 736. Del Rio points out that SD provides constant monitoring of students in hotels and motels in New York and chaperones these students in New York. (Def. Mem. at 7.) Del Rio also points to SD's admission that it entered into three or four transactions in New York. (Id.; Pl. Mem. at 8.) However, SD's brief alleges that SD has no office, bank account, telephone, or fax in New York and receives no mail in New York. (Pl. Mem. at 8.) The case law indicates that the activities Del Rio cites are not sufficient in themselves to constitute "doing business." See Airline Exchange, Inc. v. Bag, 698 N.YS.2d 694, 695-96 (2d Dept. 1999) (plaintiff not "doing business" in New York where it had entered into three or four transactions in New York, even though it had an office and bank account in New York); Invacare Corp. v. John Nageldinger & Song, Inc., 576 F. Supp. 1542, 1544-45 (E.D.N.Y. 1984) (plaintiff not "doing business" even though it maintained four business contacts in New York); Colonial Mortage Co. v. Federal Savings & Loan Association of Rochester, 395 N.Y.S.2d 798 (4th Dept. 1977) (plaintiff corporation not "doing business" in New York even though it had made over $40,000,000 in sales in New York and the contract in question was executed in New York). Furthermore, SD FL was created in April 2006, after SD and Del Rio entered into the Contract, and is a seasonal business (Compl. ¶ 11) making even more dubious the argument that its activities in New York are "permanent" and "continuous." Netherlands Shipmortgage, 717 F.2d at 736. Because more information is needed to determine whether SD is "doing business" and therefore subject to Section 1312, dismissing this action would be improper at this time.

2. **Real Party in Interest**

SD alleges that SD and Del Rio entered into the Contract in or about January 2006. (Compl. ¶ 12.) The public records of the Florida Secretary of State show that SD FL was formed

on April 12, 2006. (Def. Not. Mot. Ex. D.) Del Rio argues that because SD FL did not exist at the time the Contract was purportedly entered into, no contractual relationship could possibly exist between Del Rio and SD FL. (Def. Mem. at 4 n. 13.) Thus, Del Rio argues, SD FL is not the real party in interest to this case under Fed. R. Civ. P. 17(a),[4] SD NY is the proper party, and this case lacks complete diversity.

Although neither the Complaint nor SD's brief provides a real response to this argument, it is not appropriate to dismiss the Complaint on this basis. Del Rio's argument appears strong, but he does not provide enough support for it in his brief. There is still a great deal of uncertainty as to relationship among the various SD entities (and particularly between SD FL and SD NY) as well as the relationship between Del Rio and each of these entities. More information is needed in order to determine the precise contractual relationship (if any) between Del Rio and SD FL, which discovery could very well provide. At this time, it is sufficient to say that SD's claim is plausible, see Twombly, 127 S.Ct. at 1974, because SD could conceivably present facts that would establish that the parties to the Contract are SD FL and Del Rio or that SD FL is by some other means "the real party in interest."

### C. Enforceability of the Contract

#### 1. License

Del Rio argues that the Contract is unenforceable because SD is not licensed to provide chaperone or security services. New York law provides that "[n]o person . . . or corporation shall engage in . . . the business of watch, guard or patrol agency . . . without having first obtained

---

[4] Fed. R. Civ. P. 17(a) provides, "Every action shall be prosecuted in the name of the real party in interest."

from the department of state a license to do so." N.Y. Gen Bus. L. § 70.2. Where the purpose of a regulatory scheme "is to protect the public health and safety," lack of a license precludes the unlicensed party from suing to enforce the agreement. Richards Conditioning Corp. v. Oleet, 21 N.Y.2d 895, 896-97 (N.Y. 1968).

According to New York Department of State records, SD does not have a license to provide security services in New York. (Def. Not. Mot. Ex. C.) Thus, the question is whether SD protection can be classified as a "watch, guard or patrol agency" under N.Y. Gen. Bus. L. § 70.2. There is very little case law as to what exactly constitutes a "watch, guard, or patrol agency." Making this determination will require a close review of SD's business activities, as well as the intent of the legislature in enacting Section 70.2.

This question should not be resolved so early in the litigation. Del Rio bases his argument that SD is a "watch, guard or patrol agency" largely on SD's website, because the Complaint provides little description of SD's services. (Def. Mem. at 8.) District courts generally should not rely on information outside of the Complaint to rule on a 12(b)(6) motion, see Chandler v. Coughlin, 763 F.2d 110, 113 (2d Cir. 1985) ("[I]f the court wishes to consider matters outside the complaint in ruling on a motion to dismiss for failure to state a claim, it must treat the motion as one for summary judgment . . . and give the nonmoving party an opportunity to present evidence in opposition to the motion."), particularly information derived from a website, which is often unreliable and is frequently changed at the whim of the operator, cf. Faulkner v. Beer, 463, F.3d 130, 134 (2d Cir. 2006) (consideration of materials outside the complaint not entirely foreclosed on a motion to dismiss, but "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document").

The Complaint notes only that SD provides "chaperone and supervision services[,] . . . ensure[s] that students are safe and accounted for, and comply with hotel room curfew requirements when on tour[,] . . . [and] monitor[s] the tour group and supervise[s] the movements of the touring students at hotels to ensure their safety and accountability at all times." (Compl. ¶¶ 6-7.) The court is reluctant to create precedent regarding the definition of a "watch, guard or patrol agency" without a factual basis for determining whether SD is such an entity.

Despite the lack of information in the Complaint, it is certainly "plausible" that the licensing statute does not apply to SD. <u>Twombly</u>, 127 S.Ct. at 1974. I am not prepared to rule to the contrary before discovery.

### 2. Statute of Frauds

Del Rio argues that because the non-compete clause of the Contract extends for more than one year and is unsigned by the parties, the Contract violates the Statute of Frauds. N.Y. Gen. Oblig. L. § 5-701 provides:

> a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and *subscribed* by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> 1. By its terms *is not to be performed within one year from the making thereof* . . .
>
> 4. For the purposes of this subdivision, the tangible written text produced by telex, telefacsimile, computer retrieval or other process by which electronic signals are transmitted by telephone or otherwise shall constitute a writing and *any symbol executed or adopted by a party with the present intention to authenticate a writing shall constitute a signing*.

N.Y. Gen. Oblig. L. § 5-701 (emphasis added).

11

Because this case involves a five-year non-compete clause (which of course cannot be performed within one year), the Statute of Frauds applies even though the Contract provides for only one year of employment. See Innovative Networks, Inc. v. Young, 978 F. Supp. 167, 179 (S.D.N.Y. 1997) (contract with six-month employment term and twelve-month non-compete term is unenforceable because it violates the Statute of Frauds).

It is uncontested that neither party signed the Contract itself. However, SD argues that by writing "your offer is accepted" and then "Forever at your service. Eddie" in his email to Mercado (Compl. Ex. A), Del Rio effectively signed the contract under Section 5-701(a)(4).

In Mesibov, Glinert & Levy v. Cohen Bros. Mfg. Co., 245 N.Y. 305 (N.Y. 1927), the New York Court of Appeals held that "a name, written or printed, is not to be reckoned as a signature unless inserted with an intent, actual or apparent, to authenticate the writing." Id. at 310 (Cardozo, J.). This rule is embodied in Section 5-701, which requires a "present intention to authenticate a writing." Thus, the question is whether Del Rio intended to authenticate the Contract through his email communication with Mercado.

Such a determination should not be made without an opportunity for discovery. There is no date on Del Rio's emails with Mercado, so it is unclear exactly what "offer" Del Rio referred to when he wrote, "Your offer is accepted." (Compl. Ex. A.) Del Rio entered into contracts with SD both in 2005 and in 2006 (Compl. ¶ 10, 12) and there is no way of determining from the Complaint which of these contracts Del Rio referred to in his email. This is an issue of fact which should not be resolved on a 12(b)(6) motion, as Del Rio himself acknowledges. (Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Complaint at 10 n. 19.)

Furthermore, even if the "offer" Del Rio referred to is indeed the Contract, more information is needed to determine whether Del Rio had "a present intention to authenticate a writing" under Section 5-701. The fact that the Contract includes signature lines that were never signed suggests that Del Rio lacked such an intention. However, further extrinsic evidence could indicate otherwise, such as evidence regarding the relationship between the parties before the Contract was written or additional email communications between the parties. Any attempt to decipher Del Rio's intentions at this stage would be little more than guesswork.

### 3. Reasonableness of the Covenant Not to Compete

Finally, Del Rio argues that the covenant not to compete is unenforceable because it imposes an unreasonable temporal and geographic restraint and does not defend any legitimate protectable interest. (Def. Mem. at 9.)

"New York courts adhere to a strict approach to enforcement of restrictive covenants because their enforcement conflicts with 'the general public policy favoring robust and uninhibited competition,' and 'powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood.'" American Institute of Chemical Engineers v. Reber-Friel Co., 682 F.2d 382, 386 (2d Cir. 1982) (quoting American Broadcasting Companies, Inc. v. Wolf, 438 N.Y.S.2d 482, 487 (N.Y. 1981)). Therefore, a restrictive covenant will be "rigorously examined," American Broadcasting Companies, 438 N.Y.S.2d at 486, and will be enforced only if reasonable, Diamond Match Co. v. Roeber, 106 N.Y. 473, 482 (N.Y. 1887). This "limitation of reasonableness" hinges on the facts of each case. Karpinski v. Ingrasci, 320 N.Y.S.2d 1, 1 (N.Y. 1971).

13

In order to determine whether a covenant is enforceable, the first question is whether it is "reasonable in time and geographic scope." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999). If the covenant surmounts this first hurdle, "enforcement will be granted to the extent necessary (1) to prevent the employee's solicitation or disclosure of trade secrets, (2) to prevent the employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." Id. Courts consider six factors to determine whether a trade secret exists:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 407 (N.Y. 1993).

To consider these factors now would be premature. Del Rio argues that the non-compete clause is unreasonably broad on its face, particularly because it contains no geographic limitation. (Compl. ¶ 13; Def. Mem. at 12.) However, "restrictive covenants of broad or unlimited geographic scope have been upheld where such restrictions were reasonable in view of the specific facts of the case." Ivy Mar Co., Inc. v. C.R. Seasons Ltd., 907 F. Supp. 547, 559 (E.D.N.Y. 1995) (citing Business Intelligence Servs., Inc. v. Hudson, 580 F. Supp. 1068, 1073 (S.D.N.Y. 1984) (covenant reasonable despite unlimited geographic scope in light of international nature of plaintiff's business)). Without "specific facts," id., it is impossible to tell whether the unlimited geographic scope was necessary. The answer depends on the interest sought to be protected, whether that be confidential customer information, trade secrets, or

14

unique services. Del Rio points out that SD publishes its "Five Point Protection Plan" on its website and therefore is not making any effort to protect its alleged "trade secrets." (Def. Mem. at 11.) However, the fact that SD posts some information about its company on its website does not necessarily mean that it has no protectable trade secrets. SD may be protecting trade secrets that it does not post on the website. Naturally, SD has no obligation to reveal those secrets in the Complaint simply to prove that they exist. See Eastman Kodak Co. v. Powers Film Products, 179, N.Y.S. 325, 329 (4th Dept. 1919) ("The plaintiff was not bound to spread its secrets in detail through a complaint, in an action wherein it sought to preserve them inviolate.").

Without discovery, I cannot possibly weigh the six factors discussed in Ashland, 82 N.Y.2d at 407. Therefore, I will resolve this issue in favor of SD, which alleges the existence of legitimate trade secrets, and I need not discuss the questions of whether SD's client lists are protectable or whether Del Rio's services are unique (both of which will require discovery in any event).

**IV. Conclusion**

For the reasons set forth in this Memorandum and Order, Defendant's motion to dismiss is DENIED. Del Rio may raise on summary judgment, after the close of discovery, any or all of the arguments addressed herein.


SO ORDERED.

Dated: July 20, 2007                             /s/ Nicholas G. Garaufis
Brooklyn, N.Y.                                      NICHOLAS G. GARAUFIS
                                                    United States District Judge